IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| DAVID MCKAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 1:20CV237 |
| | ) | |
| ANDREW SAUL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff David McKay brought this action to obtain review of a final decision of the Commissioner of Social Security denying his claim for supplemental security income ("SSI"). The Court has before it the certified administrative record and cross-motions for judgment.

**I. PROCEDURAL HISTORY**

Plaintiff filed an application for SSI, alleging a disability onset date of January 1, 2010. (Tr. 13, 158-166.) The application was denied initially and upon reconsideration. (Tr. 15, 88-91, 97-106.) After a hearing, the Administrative Law Judge ("ALJ") determined on December 27, 2018 that Plaintiff was not disabled under the Act since April 7, 2016, the date the application was filed. (Tr. 23, 13-57.) The Appeals Council denied a request for review making the ALJ's decision the final decision for purposes of review. (Tr. 1-6.)

**II. STANDARD FOR REVIEW**

The scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g);

*Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The issue before the Court is not whether Plaintiff is disabled but whether the finding that he is not disabled is supported by substantial evidence and based upon a correct application of the relevant law. *Id.*

### III. THE ALJ'S DECISION

The ALJ followed the well-established sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. § 416.920.[1] *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since the application date of April 7, 2016. (Tr. 16.) The ALJ next found the following severe impairments at step two: hypertension; history of nephrolithiasis and urethral structuring, status-post right ureteral implant; hepatitis C; chronic pain syndrome; arthralgia; plantar fasciitis; rectal abscesses; lumbar facet arthropathy; depression; and somatic symptom disorder. (*Id.*) At step three, the ALJ found that Plaintiff did

---

[1] "The Commissioner uses a five-step process to evaluate disability claims." *Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012) (citing 20 C.F.R. § 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to his [or her] past relevant work; and (5) if not, could perform any other work in the national economy." *Id.* A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. *Id.* "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the Secretary to produce evidence that other jobs exist in the national economy that the claimant can perform considering his age, education, and work experience." *Hunter*, 993 F.2d at 35 (internal citations omitted).

not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1. (*Id.*)

The ALJ next set forth Plaintiff's Residual Functional Capacity ("RFC") and determined that he could perform light work, with the following additional limitations

> occasional overhead reaching with the dominant, right upper extremity; frequent reaching in all other directions, handling, fingering, feeling, pushing, pulling, and/or operating hand controls with the right upper extremity; frequent climbing ramps and stairs; occasional climbing ladders, ropes, or scaffolds; frequent balancing; occasional stooping, kneeling, crouching, and/or crawling; avoid all exposure to workplace hazards, such as dangerous moving machinery and unprotected heights; he is able to understand and perform simple, routine, repetitive tasks, and maintain concentration, persistence, and pace to stay on task for 2 hour periods over a typical 8-hour day, in low stress setting, further defined to mean no production-pace or quota-based work; rather, he requires a goal-oriented job primarily dealing with things rather than people, with no more than occasional changes in the work setting, no more than frequent social interaction with supervisors and/or co-workers, but only occasional social interaction with public.

(Tr. 19.) At the fourth step, the ALJ determined that Plaintiff was unable to perform his past relevant work. (Tr. 21.) At step five, the ALJ determined that there were other jobs in the national economy that Plaintiff could perform. (Tr. 22.)

### IV. ISSUES AND ANALYSIS

In pertinent part, Plaintiff contends that "[t]he ALJ erred in his assessment of the medical opinion of the [consulting examiner] Dr. Bert Lucas, where Dr. Lucas performed the only psychological examination of the claimant in the record at the time." (Docket Entry 16 at 4.) As explained in greater detail below, the Court finds this argument persuasive.

3

## A. The ALJ's Assessment of Dr. Lucas' Opinion Frustrates Meaningful Review.

The treating source rule requires an ALJ to give controlling weight to the opinion of a treating source regarding the nature and severity of a claimant's impairment. 20 C.F.R. § 416.927(c)(2).[2] The rule also recognizes, however, that not all treating sources or treating source opinions merit the same deference. The nature and extent of each treatment relationship appreciably tempers the weight an ALJ affords an opinion. *See* 20 C.F.R. § 416.927(c)(2)(ii). A treating source's opinion, like all medical opinions, deserves deference only if well-supported by medical signs and laboratory findings and consistent with the other substantial evidence in the case record. *See* 20 C.F.R. § 416.927(c)(2)-(4); SSR 96-2p, 1996 WL 374188, at *1 (July 2, 1996). When a treating source's medical opinion is not given controlling weight, the ALJ should consider the following factors in deciding what weight to give a medical opinion: (1) the length of the treatment relationship, (2) the frequency of examination, (3) the nature and extent of the treatment relationship, (4) the supportability of the opinion, (5) the consistency of the opinion with the record, (6) whether the source is a specialist, and (7) any other factors that may support or contradict the opinion. 20 C.F.R. § 416.927(c)(2)-(c)(6). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590. The ultimate issue of whether a claimant is disabled is administrative and therefore reserved for

---

[2] These regulations apply for applications, like Plaintiff's, filed before March 27, 2017. *See* 20 C.F.R. § 416.927. For applications filed on or after March 27, 2017, a new regulatory framework for considering and articulating the value of medical opinions has been established. *See id.* § 416.920c; *see also* 82 Fed. Reg. 5844-01, 2017 WL 168819 (revisions to medical evidence rules dated Jan. 18, 2017, and effective for claims filed after Mar. 27, 2017).

the Commissioner. 20 C.F.R. § 416.927(d).

### i.   Dr. Lucas' Consultation

In this case, Plaintiff testified that he had Reye syndrome when he was a child and, due to brain swelling, he underwent drilling to his skull to relieve the pressure. (Tr. 44.) He dropped out of school. (Tr. 35.) He has trouble with reading and writing. (Tr. 49.)  Before he applied for disability due to various physical and mental issues, he worked as an electrician's helper, crawling under houses, drilling holes and running wires. (Tr. 35.)

On June 15, 2016, Plaintiff underwent a psychological consultative examination with Dr. Burt Lucas. Dr. Lucas noted that Plaintiff was cooperative with the examination and explained that he had ongoing pain issues which interfered with his ability to work consistently. (Tr. 591.) He also stated that he did not like being around other people; he dropped out of school to work with his father in electrical work, had been in special education classes, and had to repeat the sixth grade. (Tr. 592.) Consistent with his testimony, Plaintiff also reported to Dr. Lucas his history of Reye Syndrome and cranial surgery. (Tr. 593.) Dr. Lucas also observed that Plaintiff was focused on his chronic, persistent pain. (*Id.*)

On mental status examination, Plaintiff displayed a logical thought process with easy distractibility, difficulty concentrating and a diminished, delayed auditory recall. (*Id.*) His concept formation ability was diminished, and Dr. Lucas observed, "he appears to be functioning, at best, at about the borderline intellectual range." (*Id.*) Plaintiff could not identify the similarities between an apple and a cucumber, was unable to spell the word "world" backwards, was unable to compute serial 7's starting from 100, and Dr. Lucas concluded that

both his judgment and insight were limited. (Tr. 594.)

Dr. Lucas concluded that Plaintiff's "[c]oncept formation ability is diminished as he appears to be functioning at about the borderline to mild range of intellectual disability." (*Id.*) Dr. Lucas further concluded:

> Based on the above, Mr. McKay would be able to understand and follow simple one to two-step instructions although he will likely have difficulty retaining the instructions over time and will need to have them repeated periodically. He is expected to have moderate difficulty sustaining attention to perform simple, routine repetitive tasks in addition to which his performance will likely be slow and not necessarily accurate. His ability to relate with others appears fair at least in a one-on-one formal setting. It is believed he would not be able to tolerate regular day-to-day work activity unless such activity was within a sheltered workshop environment or involved in an activity consistent with his cognitive level.

(*Id.*) Dr. Lucas diagnosed somatic symptom disorder, persistent with predominant pain, rule out borderline intellectual functioning, and rule our adjustment disorder with anxiety. (*Id.*)

The vocational expert ("VE") testified that if Plaintiff had to have instructions repeated to him two to three times per day, then he would require a special accommodation which was not compatible with competitive work. (Tr. 55.) The VE also testified that if Plaintiff were limited to a sheltered workshop environment, he would not be competitively employable. (*Id.*)

### ii. The ALJ's Decision

The ALJ discussed Dr. Lucas' opinion in assessing Plaintiff's RFC. Specifically, in describing the medical record, the ALJ explained that:

> At a June 2016 psychological consultative examination performed by Bert Lucas, Ph.D., the claimant's gait was normal and no motility problems were noted, despite the claimant's

6

> allegations of difficulty ambulating due to ongoing radiating pain. His grooming was normal, and he made good eye contact. Notes further indicate rapport was easily established, and the claimant remained cooperative throughout the evaluation. The claimant indicated he continued to attempt to do side jobs depending on his pain level. He alleged he did not like to be around others. He admitted to several prior DWIs. On mental status examination, the claimant's thought content was appropriate for both his mood and the circumstances. There was no evidence of paranoia or delusions. Although easy distractibility was noted, his memory was intact. Dr. Lucas diagnosed the claimant with somatic symptom disorder (Exhibit 3F). He listed *rule out* diagnoses for borderline intellectual disability and adjustment disorder with anxiety, which do not constitute medically determinable impairments. Dr. Lucas did not conduct IQ testing, and the file does not contain any IQ testing.

(Tr. 20.)

Later in his RFC assessment, when he began weighing the medical opinions of record, the ALJ again mentioned Dr. Lucas's consultative opinion. Specifically, the ALJ stated that:

> Dr. Lucas opined the claimant would be able to understand and follow simple one to two-step instructions, but would likely have difficulty retaining the instructions over time and will need to have them repeated periodically. Dr. Lucas further opined the claimant was expected to have moderate difficulty sustaining attention to perform simple, routine repetitive tasks, and the claimant's ability to relate with others appeared fair at least in a one-on-one formal setting. In addition, Dr. Lucas opined it was believed that the claimant would not be able to tolerate regular day-to-day work activity unless such activity was within a sheltered workshop environment or involved in an activity consistent with his cognitive level (Exhibit 3F). Little weight has been accorded to his opinion. It was based on a one-time evaluation of the claimant and is not generally consistent with the evidence of record.

(Tr. 21.)

7

### iii. Plaintiff's Argument

Plaintiff contends that the analysis provided by the ALJ for discounting Dr. Lucas' opinion—that it was a one-time evaluation that was generally inconsistent with the record— is not supported by substantial evidence. (Docket Entry 16 at 4-8.) In support of this general contention, Plaintiff more specifically contends that the

> record does not contain any other formal psychological evaluations with an expert – this is why the CE was ordered. *See* 20 C.F.R. § 416.912. Thus, the ALJ's argument that his opinion is "not generally consistent with the evidence of record" rings hollow as there is no other examination in the record which can conflict with Dr. Lucas's examination. *See, e.g.*, *Patel v. Colvin*, No. 3:15-cv-412-FDW-DSC, 2016 WL 1371172, at *3 (W.D.N.C., Mar. 7, 2016) (adopted Apr. 5, 2016) ("Other than noting that Plaintiff had sought no other treatment for her back and joint pain, the ALJ cited to nothing in the record that supports his treatment of Dr. Reynolds' opinion. Dr. Reynolds was the only doctor to evaluate Plaintiff's back and knee pain. His opinion is supported by his examination which provided objective evidence of [her conditions]…"); *see also Torres v. Colvin*, No. 1:14-cv-7-RLV, 2016 WL 54933, at *7 (W.D.N.C. Jan. 5, 2016) ("The ALJ also found that Dr. Lanier's opinion was inconsistent with Plaintiff's "clinical presentations, conservative treatment, and objective tests and scans," but did not specifically point this Court to any examples of conflicts or inconsistencies that exist in the record. In short, the ALJ's decision does not provide any basis on which this Court may review his conclusion as to the weight given to Dr. Lanier's opinion.").

> This error was very harmful as again, the VE testified that if Mr. McKay required repetition of instructions multiple times per day as Dr. Lucas opined would be required, then he would not be competitively employable; similarly, he would not be competitively employable if he required a sheltered workshop setting as Dr. Lucas noted would be necessary for him to tolerate regular day to day work activity (or otherwise be involved in activity consistent with his cognitive level). *See* AR 55; 594. Additionally, the jobs which the ALJ based his Step Five denial

8

> upon – marker, router and order caller – all require a reasoning level of "2" and Dr. Lucas's restriction of Mr. McKay to simple, one to two step instructions, would limit him to reasoning level "1" jobs. *See* Dictionary of Occupational Titles ("DOT") §§ 209.587-034; 209.667-014; 222.587-038; Appendix C § III (Dept. of Labor 1977).
>
> And as outlined above, Dr. Lucas's evaluation supports his assessed limitations for Mr. McKay as he had a history of Reye Syndrome with cranial surgery and special education classes. And on [mental status exam], Mr. McKay was easily distractible, had difficulty concentrating and diminishment in delayed auditory recall, all of which support Dr. Lucas's finding that he would be limited to simple, one to two step instructions and would need them repeated periodically. Additionally, his need for low demand, sheltered workshop setting work is supported by his limited insight and judgment, difficulties with simple calculations, simple spelling and limited fund of knowledge displayed on examination. *See supra.*
>
> Thus, the ALJ's rationale for rejecting Dr. Lucas's opined limitations when forming the RFC – that his opinion was inconsistent with other examinations on record – is not supported by substantial evidence as there were no other psychological examinations in the record before the ALJ and thus nothing with which to conflict with Dr. Lucas's examination and conclusions.

(Docket Entry 16 at 6-8.)

### iv. The ALJ's Assessment Frustrates Judicial Review.

The ALJ's assessment of Dr. Lucas' opinion is not susceptible to judicial review. As noted, the ALJ discounted Dr. Lucas' opinion because it was a one-time evaluation that was purportedly "not generally consistent with the evidence of record." (Tr. 21.) The problem with this is that the ALJ does not follow this conclusory assertion up with additional explanation or with any citation to the record. Nor, upon a review of the ALJ's decision, is it clear to the

9

undersigned precisely what "evidence of record" Dr. Lucas' consultative opinion purportedly contrasts with. The "evidence of record" in this case is approximately 1,500 pages long. In short, the ALJ's decision does not provide a sufficient basis for this Court to review his conclusion as to the weight given to Dr. Lucas' opinion.

In fact, the Fourth Circuit Court of Appeals has found that such conclusory and unsupported weighing of medical opinions precludes judicial review. For example, in *Monroe v. Colvin*, the Fourth Circuit remanded a matter for further administrative proceedings where:

> [t]he ALJ stated that he gave [a medical] opinion only "limited weight" based on a determination that "the objective evidence or the claimant's treatment history did not support the consultative examiner's findings." A.R. 20. However, the ALJ did not specify what "objective evidence" or what aspects of Monroe's "treatment history" he was referring to. As such, the analysis is incomplete and precludes meaningful review. The ALJ gave similarly conclusory analysis of other opinions. *See, e.g.*, A.R. 20 ("The undersigned gives the consultative examiner's findings some weight, to the extent that it is consistent with the residual functional capacity. The consultative examiner's opinion is supported by the objective evidence."); A.R. 20 ("The undersigned gives this opinion, some weight to the extent that it is consistent with the residual functional capacity. The objective evidence supports the consultative examiner's findings."); A.R. 20 ("The undersigned also gives this opinion some weight. The consultative examiner opinion is consistent with the objective evidence and other opinions of record, such as the first consultative physical examination."); A.R. 20 ("The undersigned gives the state agency findings limited weight. After reviewing the objective evidence, the undersigned finds that the claimant's limitations are more consistent with a light level of exertion."); A.R. 20 ("The undersigned gives the state agency consultants['] findings significant weight. The state agency findings are supported by the objective evidence and the claimant's subjective complaints."). Without more specific explanation of the ALJ's reasons for the differing weights he assigned various medical

10

> opinions, neither we nor the district court can undertake meaningful substantial-evidence review.

*Monroe v. Colvin*, 826 F.3d 176, 191-92 (4th Cir. 2016).[3] Because the ALJ's weighing of Dr. Lucas's opinion in this case is both conclusory and unsupported, like the medical opinions described in *Monroe*, the administrative decision is not susceptible to meaningful judicial review. Consequently, this matter should be remanded for further administrative proceedings.[4]

### v. Plaintiff's Arguments to the Contrary Are Not Persuasive.

The Commissioner points to evidence in the record and contends that it supports the ALJ's decision to discount Dr. Lucas' opinion. (Docket Entry 20 at 9-12.) However, there are a number of problems with these efforts. First, the ALJ pointed to little, if any, of this evidence in explaining why he discounted Dr. Lucas' opinion and the Court is not permitted to entertain

---

[3] The Fourth Circuit has repeatedly cited *Monroe* to require specific explanations for an ALJ's determination of a medical opinion's weight. For example, in *Woods v. Berryhill*, the Fourth Circuit summarized *Monroe* as "finding insufficient the explanation that the 'consultative examiner opinion is consistent with the objective evidence and other opinions of record' *even though the ALJ had recounted various medical evidence earlier in his opinion*." 888 F.3d 686, 695 (4th Cir. 2018) (emphasis added). The Court then determined that the ALJ's weighing of medical opinions was conclusory and sparse. *Id.* ("[T]he ALJ gave Dr. Burgess's opinion 'some weight' because 'it is rather vague and general in nature,' but did not discuss what aspects of that opinion he found overly vague."). Consequently, an ALJ's mere recounting of medical evidence is not, by itself, necessarily tantamount to an explanation for the weight attributed to a medical provider.

[4] *See also Testamark v. Berryhill*, 736 Fed. App'x 395, 398 (4th Cir. 2018) ("[D]ecision makers evaluating claims for social security disability benefits must show their work. This requires the ALJ to present us with findings and determinations sufficiently articulated to permit meaningful judicial review. The ALJ failed to do so here. Instead, we are left to guess as to how the ALJ reached her evaluation of the conflicting medical opinions in light of the evidence of record.") (internal citations and quotations omitted); *Friend v. Commissioner of Social Security*, 375 Fed. Appx. 543, 552 (6th Cir., Apr. 28, 2010) ("[I]t is not enough to dismiss a treating physician's opinion as 'incompatible' with other evidence of record; there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick[.]").

11

post-hoc rationalizations not set forth in the ALJ's decision.[5] *See Anderson v. Colvin*, No. 1:10CV671, 2014 WL 1224726, at *1 (M.D.N.C. Mar. 25, 2014) (unpublished) (Osteen, C.J.) (concluding that the Court may not consider post-hoc rationalizations and may only consider reasons first set forth by the administrative agency) (citing *Securities & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194 (1947)).

Second, as the Fourth Circuit explained in *Woods*, a case in which it interpreted its holding in *Monroe*, merely "recount[ing] various medical evidence earlier in [an ALJ's] opinion" does not constitute a sufficient explanation for the weight attributed to a medical opinion. 888 F.3d at 695. Consequently, the ALJ's mere summarization of the medical evidence, without more, was insufficient to discharge his duty of articulating an analysis susceptible to judicial review regarding his decision to discount Dr. Lucas' opinion.

Third, despite the Commissioner's argument to the contrary (Docket Entry 20 at 9-10), the ALJ's assessment of the non-examining state agency consultants did not also satisfy his duty to explain his decision to discount Dr. Lucas' opinion. *See Williams v. Colvin*, No. 1:16CV122, 2016 WL 6459780, at *6 (M.D.N.C. Oct. 31, 2016) ("To the extent that Defendant contends that the ALJ sufficiently addressed the relevant evidence by giving weight to the state agency consultant's review of the evidence, the Court concludes that simply assigning significant weight to the state agency consultant's opinion does not satisfy the ALJ's obligation

---

[5] For example, the Commissioner points to physical and mental status reports, and other similar evidence, contained in the record and contends that it supports the ALJ's decision to reject Dr. Lucas' opinion. (Docket Entry 20 at 9.) However, the ALJ mentioned little to none of this evidence in his decision and the Court will not make findings of fact about it in the first instance. That, as explained, is the role of the ALJ, which he may perform on remand.

12

to analyze and weigh the evidence and then sufficiently explain that determination as required by the regulations."). It is the role of the ALJ to explain the weight given to the relevant evidence. The Commissioner's argument to the contrary "misunderstands the role of the state agency consultants. The ALJ is required to balance conflicting evidence and make a determination of disability, not the consultants." *Garner v. Colvin*, 1:12CV1280-WO-JLW, 2015 WL 710781, at *8 (M.D.N.C. Feb. 18, 2015) (citation omitted).

Fourth, the Commissioner also contends that the fact that the ALJ acknowledged that Plaintiff worked for a number of years without any reported accommodations warranted discounting Dr. Lucas' opinion. (Docket Entry 20 at 11 referencing Tr. 18.) This is not a persuasive argument; however, if for no other reason than the ALJ specifically concluded that Plaintiff could no longer perform his past relevant work. (Tr. 21.) Moreover, Plaintiff is now older, and has developed physical problems including chronic pain syndrome, nephrolithiasis and urethral structuring issues, rectal abscesses, lumbar facet arthropathy and Hepatitis C which limit him (per the ALJ's own admission) to less than the full range of light work.[6] (Tr. 16, 19.) Again, the Commissioner's arguments are unpersuasive.[7]

---

[6] The ALJ's observation, made in assessing Plaintiff's depression, that Plaintiff has not received "formal mental health treatment" (Tr. 21) did not satisfy his duty of explanation when it came to rejecting Dr. Lucas' opinion. Plaintiff suffered from a number of severe impairments, including chronic pain syndrome. (Tr. 16.) Moreover, one of Dr. Lucas' concerns was that Plaintiff "appear[ed] to be functioning at about the borderline to mild range of intellectual disability," which presumably would not be responsive to mental health treatment like depression or anxiety. (Tr. 594.)

[7] It is unclear to the Court why the ALJ did not order intelligence testing, even after acknowledging Dr. Lucas' rule out borderline intellectual functioning diagnosis and further acknowledging the lack of intelligence testing in the record. (Tr. 20.) *See, e.g., Mills v. Astrue*, No. 1:09CV124-LJM-TAB, 2010 WL 1258048, at *5 (S.D. Ind. Mar. 26, 2010) (concluding in similar circumstances that "the ALJ should have acknowledged that the record before him was incomplete

13

None of this necessarily means that Plaintiff is disabled under the Act and the undersigned expresses no opinion on that matter. Nevertheless, the undersigned concludes that the proper course here is to remand this matter for further administrative proceedings. The Court declines consideration of the additional issues raised by Plaintiff at this time.[8] *Hancock v. Barnhart*, 206 F. Supp. 2d 757, 763-764 (W.D. Va. 2002) (on remand, the prior decision of no preclusive effect, as it is vacated and the new hearing is conducted).

## V. CONCLUSION

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be **REVERSED**, and that the matter be **REMANDED** to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for proceedings consistent with this Recommendation. To this extent, Defendant's Motion for Judgment on the Pleadings (Docket Entry 19) should be **DENIED**, and Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 15) should be

---

and ordered intelligence testing"). The ALJ may consider this issue further on remand.

[8] In addition to Plaintiff's argument regarding Dr. Lucas, he also contends that "[t]he [Appeals Council] erred in its treatment of the school psychological report." (Docket Entry 16 at 8.) In support of his contention that the Appeals Counsel erred, Plaintiff supplies evidence not presented to the ALJ, but which was supplied to the Appeals Council, which indicates that in 1979 he was designated within the "borderline mentally deficient range of intelligence." (Docket Entry 16, Ex. 1 at 1; Tr. 2.) Plaintiff was also functioning "below average intellectually" in school in 1984 and was designated as "learning disabled." (Docket Entry 16, Ex. 1 at 3; Tr. 2.) Because remand is proper for other reasons discussed above, the Court will not definitively resolve Plaintiff's Appeals Counsel argument. Nevertheless, the Court will note that, at least at on its face, Plaintiff's argument seems to carry some force. *See Wilson-Coleman v. Colvin*, No. 1:11CV726, 2013 WL 6018780, at *6 (M.D.N.C. Nov. 12, 2013) ("[A]ssessing the probative value of competing evidence is quintessentially the role of the fact finder and this Court is not authorized to undertake the analysis in the first instance.").

**GRANTED**. However, to the extent that Plaintiff's motion seeks an immediate award of benefits, it should be **DENIED**.

_____
Joe L. Webster
United States Magistrate Judge

April 26, 2021
Durham, North Carolina